## A11A1912. SKIPPER v. THE STATE.
### (726 SE2d 127)

BARNES, Presiding Judge.

Following her conviction for criminal attempt to commit armed robbery, Terry Lee Skipper appeals from the order of the trial court denying her motion for new trial. On appeal, Skipper contends that the evidence was insufficient to sustain her conviction, and that trial counsel was ineffective. Upon our review, we affirm.

1. In claiming that the evidence was insufficient to support the jury's verdict, Skipper argues that the statement from her brother about her involvement, which he later recanted, and her presence at a nearby gas station were insufficient evidence of guilt. We are not persuaded.

In challenges to the sufficiency of the evidence supporting a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

So viewed, the evidence shows that at approximately 4:00 a.m. on July 10, 2011, police were surveilling a Waffle House because of a recent rash of robberies at several Waffle House restaurants. Police observed two people, later identified as Jerry Skipper and Jocelyn Thomas, emerge from the parking lot behind the restaurant and approach the rear of the building. Jerry Skipper was wearing a red and black wig and had a red bandana tied around the lower half of his face. He was armed with a handgun. After he was apprehended, Jerry Skipper confessed to robbing another Waffle House on July 2, 2011, and to robbing the same restaurant where he was apprehended

on July 4. Jerry Skipper said that the defendant, Terry Skipper, who is also his twin sister, participated in each robbery as the driver and by providing him with his disguise.

Police questioned Skipper, and she denied any involvement. She told police that she put her brother and Thomas out of the car because they were arguing, but kept Thomas' baby with her. Skipper also said that her check oil light was on, so she went to the Shell gas station to check out her car, and change the baby's diaper even though it was approximately 4:00 in the morning. She told police that she saw the police descend upon the Waffle House and merely assumed that it was another robbery attempt, and that she did not leave the station because of the police.

At the trial, Skipper testified that she and her brother had been arguing the night of the attempted robbery, and that she pulled over because her oil light and "check engine" light came on. She testified that they were still arguing and that her brother got out of the car and said that he would walk home. Skipper testified that she and Thomas then "got into it" and that Thomas said that she would take her baby and get someone else to pick her up. Skipper testified that she would not let Thomas have the baby because Thomas had been drinking, did not know anyone in the area, and it was too "airish" for the baby. She further testified that Thomas then walked off.

A third accomplice, Melevina Hagins, testified that she was in the car with Skipper and her brother when they discussed robbing the restaurants. She further testified that she was with Skipper, her brother, and Thomas the night of the July 4 robbery. Hagin said that she saw red and black hair extensions in Skipper's car, and that she overheard Skipper tell someone on her cell phone that "it's going down." Hagin testified that Skipper dropped her at the Waffle House the night of the July 4 robbery and that she had telephoned Skipper when the coast was clear.

Jerry Skipper, who had pled guilty to the charges, testified at trial that Skipper was not involved in the attempted robbery and that he lied to police about Skipper's involvement because the previous month she had threatened to "call the police on [him] for something that [he] didn't do." He testified that on the evening of the July 10 attempted robbery, he and his sister had an altercation at Wal-Mart earlier that night. He further testified that he got out of the car when his sister pulled into the gas station, and that Thomas had gotten out of the car "initially . . . [to go] in the store."

Skipper was indicted for criminal attempt to commit armed robbery for her involvement in the events of July 10, 2011 armed robbery, three counts of aggravated assault, and theft by taking related to the July 2 and July 4 robberies. Following a jury trial, she was convicted of criminal attempt to commit armed robbery, but

acquitted of the other charges.

A person commits the offense of criminal attempt to commit armed robbery when, with intent to commit theft, she performs any act which constitutes a substantial step toward taking the property of another from the person by use of an offensive weapon or anything having the appearance of such a weapon. OCGA §§ 16-4-1; 16-8-41 (a). A person is concerned in the commission of a crime and a party thereto when the person "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (3).

> While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. If the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting the commission of the crime.

(Citations, punctuation and emphasis omitted). *Butler v. State*, 194 Ga. App. 208, 209 (2) (390 SE2d 278) (1990).

While OCGA § 24-4-8 provides that "in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient," "the testimonies of multiple accomplices suffice to corroborate each other and sustain a conviction." *Hawkins v. State*, 290 Ga. App. 686, 688 (660 SE2d 474) (2008). And, to the extent that Skipper's brother recanted his prior statement that she was involved in the attempted robbery, "the prior inconsistent statement of a witness is admissible as substantive evidence if the witness testifies at trial and is subject to cross-examination," as was the case here. *Kinney v. State*, 271 Ga. 877, 880 (2) (525 SE2d 91) (2000).

Solving evidentiary conflicts and inconsistencies is a matter of credibility for the finder of fact, not this Court. *Boyd v. State*, 259 Ga. App. 864, 866 (3) (578 SE2d 472) (2003). The presence of some evidence, though contradicted, which supports each necessary element of the State's case, is sufficient for this Court to uphold the jury's verdict. *Alewine v. State*, 273 Ga. App. 629 (1) (616 SE2d 472) (2005).

Here, evidence that Skipper discussed the attempted armed robbery beforehand with the co-defendants, provided part of the disguise for her brother, drove the co-defendants to the crime scene, was present near the scene of the attempted robbery, fled the scene after the attempted robbery, and changed her story about the details of the night of the attempted robbery was sufficient to allow the jury to find beyond a reasonable doubt that Skipper aided and abetted the charged crime and was guilty as a party. OCGA § 16-2-20; *Jackson v. Virginia*, 443 U. S. at 319.

2. Skipper also contends that trial counsel was ineffective for failing to call her father as a witness to testify for her defense. She argues that her father would have corroborated her testimony about why she was at the gas station the night of the robbery.

> To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984), a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.

*Kurtz v. State*, 287 Ga. App. 823, 825 (652 SE2d 858) (2007). "Making that showing requires that [Skipper] rebut the strong presumption that her lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004). "As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citations and punctuation omitted.) *Beck v. State*, 292 Ga. App. 472, 474 (2) (a) (665 SE2d 701) (2008). "We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous." *Kurtz*, supra, 287 Ga. App. at 825.

Skipper's attorney testified at the motion for new trial hearing that he did not feel that it was necessary to have Skipper's father as a witness. He did not elaborate further as to his reason for not doing so. Skipper's father testified at the hearing that his daughter called him the night of July 10 and said that her "check engine" light was on, and also mentioned that she and her brother had gotten into an argument. He further testified that he told her to go to a service station and have it checked out. The father did not know the time the call was made.

> Under the circumstances, trial counsel's [presumed] strategic judgment call not to present largely cumulative testi-

mony from [an] additional defense witness[ ] was not so unreasonable as to establish ineffective assistance of counsel. Trial counsel's failure to present cumulative evidence does not amount to ineffective assistance.

(Citations and punctuation omitted.) *Burkes v. State*, 302 Ga. App. 895, 898 (691 SE2d 910) (2010); *Johnson v. State*, 257 Ga. App. 30, 31-32 (1) (570 SE2d 344) (2002) (no ineffective assistance where counsel failed to introduce cumulative testimony).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED MARCH 16, 2012.

*Carnesale, Delan & Flinn, Charles C. Flinn*, for appellant.
*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney*, for appellee.